OPINION
{¶ 1} Appellant, Nathan A. Kinsey, appeals from his conviction for disorderly conduct.
 {¶ 2} In the early morning hours of February 16, 2003, appellant and a friend entered Taco Bell, a restaurant located in the city of Kent. The line for service that morning was significant. According to Betty Utt, a Taco Bell employee, lengthy delays are typical due to the heightened business Taco Bell receives between two and three in the morning. Testimony indicated that the restaurant was at "full capacity" and, owing to the condition for which late night Taco Bell patrons are famous, quite loud.
 {¶ 3} Appellant entered the line for service. According to Utt, appellant became gradually more obstreperous during the course of his wait. Utt testified that appellant's use of loud, foul language was audible despite the general sonority of the crowd.
 {¶ 4} In the meantime, two Kent police officers, Officer Altomare and Officer Matthews, were in the restaurant for security purposes. According to Altomare, the officers observed a group of people, of which appellant was a member, engaged in "loud boisterous behavior." The officer testified to the group's frequent use of the word "fuck." Officer Matthews approached the group and warned them he would "take action" if the pandemonium did not cease.
 {¶ 5} Appellant continued his imprecations without regard to the officer's warning. Utt then proposed that appellant "calm down" or risk not being "served." Appellant ignored this warning whereupon Utt explicitly refused to serve appellant. In response, appellant exclaimed "fuck you" and instructed the cashier to "suck his dick." Utt testified that appellant's invectives were heard by others and she was "very much" offended.[1]
 {¶ 6} The officers approached appellant and asked for his identification. When appellant refused, he was arrested and charged with disorderly conduct. Although appellant denied imbibing in alcoholic beverages, other witnesses testified that he had been drinking.
 {¶ 7} Appellant was tried to the bench and convicted. Appellant was sentenced to thirty days in jail of which twenty nine were suspended and fined the maximum $250. Appellant now appeals his conviction assigning four errors for our review.
 {¶ 8} We must initially note that appellant fails to set forth separate arguments for each assignment of error in his brief. App.R. 16(A)(7) requires a party to include in his or her brief: "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. * * *"
 {¶ 9} This court "* * * may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2); see also, Geauga Co. Bd. of Health v.Pauer (Dec. 12, 2003), 11th Dist. No. 2002-G-2462, 2003 Ohio App. LEXIS 5975, at 10.
 {¶ 10} Despite the patent structural defects of appellant's brief, we shall address appellant's claims as his arguments under each assignment are set forth sequentially. In his first assignment of error, appellant contends "[t]he testimony of Betty Utt, the City of Kent's witness, shows no real evidence against the defendant-appellant. She was confused and lied in her answering under oath." Appellant's initial assignment appears to make the dual challenge of weight and sufficiency.[2]
 {¶ 11} The legal distinction between evidential weight and sufficiency is well established. In short, sufficiency is a test of adequacy. When measuring the sufficiency of the evidence, a reviewing court must consider whether the state set forth enough evidence to sustain the jury's verdict as a matter of law. Statev. Thomkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52. Alternatively, weight of the evidence concerns the persuasive weight of credible evidence offered at trial to support one side rather than the other. Id. When inquiring into the weight of the evidence, an appellate court sits as a "thirteenth juror" and reviews the factfinder's resolution of the conflicting testimony. Id.
 {¶ 12} With respect to the sufficiency of the evidence, the city was required to prove, beyond a reasonable doubt that appellant recklessly caused:
 {¶ 13} "* * * inconvenience, annoyance or alarm to another, by doing any of the following:
 {¶ 14} "(2) Making unreasonable noise or offensively coarse utterance, gesture or display, or communicating unwarranted and grossly abusive language to any person, which by its very utterance or usage inflicts injury or tends to incite an immediate breach of the peace[.]" Kent Municipal Ordinance, section 509.03(a)(2).
 {¶ 15} A person acts recklessly when he or she "* * * perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22.
 {¶ 16} In the current matter, the city established that Officer Matthews warned appellant's group that if their uproariousness did not stop, he would "take action." However, Betty Utt's and Officer Altomare's testimony indicate that appellant continued to use loud profanity and act in an excitable fashion after Matthew's warning. This evidence, in our view, is sufficient to demonstrate the mens rea adequate for a conviction for disorderly conduct.
 {¶ 17} Both Utt and Altomare testified that appellant's language was offensive. However, because both Utt and Altomare testified to being offended and the charging instrument does not delineate which individual was the party caused "inconvenience, annoyance or alarm," we shall assess the testimony of both to determine whether appellant's utterances inflicted injury or tended to incite an immediate breach of the peace.
 {¶ 18} Altomare testified that he was in the restaurant to provide security and Taco Bell has utilized police security of this sort for some ten to fifteen years. The officer stated that the "`F' word was used quite frequently and quite loosely by several in the group" of which appellant was a member. However, from the officer's testimony, it appears the so called "F" words were deployed in the course of the group's collective conversation(s). The officer did not testify that any of the "F" words were directed at him or anyone in general.
 {¶ 19} The Supreme Court of the United States has defined limited classes of speech which are not constitutionally protected. Chaplinsky v. New Hampshire (1942), 315 U.S. 568,571-572. Within this class is a category of speech understood as "fighting words." Id. Fighting words are those words which are likely by their very utterance to inflict injury or incite the average person to an immediate breach of the peace. Id. at 573. Pursuant to Chaplinsky and its progeny, the Supreme Court of Ohio has held: "[w]here epithets, used in a public place and willfully directed at those who can hear them, are likely to provoke the average person to an immediate retaliatory breach of the peace, they are fighting words, and the utterance thereof may be punished as a criminal act." City of Cincinnati v. Karlan
(1974), 39 Ohio St.2d 107, paragraph two of the syllabus.
 {¶ 20} To determine whether language rises to the level of fighting words, we must look at the circumstances surrounding the utterance. City of Kent v. Dawson (June 8, 2001), 11th Dist. No. 2000-P-0094, 2001 Ohio App. LEXIS 2576, at 5. As indicated above, the officer heard appellant, inter alia, frequently using the "F" word. The officer testified that he did not hear appellant say anything to Betty Utt. Moreover, the officer indicated he was "used to hearing" the language which formed the basis of the charge.
 {¶ 21} In most cases in which a police officer is the offended party, there is a distinction between "* * * the mere use of profane language in the presence of the police officer and when the language is directed to the officer personally." Statev. Wood (1996), 112 Ohio App.3d 621, 627. Moreover, "* * * because some degree of verbal abuse goes with the territory, the standard of what constitutes fighting words is raised in those cases where police officers are the offended party." Id., citingToledo v. Grince (1989), 48 Ohio App.3d 126. Here, the use of the word "fuck" was impersonal and not directed toward the police officers present. Under the circumstances, a reasonable person would not have been provoked to an immediate breach of the peace as Officer Altomare was not provoked to an immediate breach of the peace. City of Warren v. Patrone (1991),75 Ohio App.3d 595, 598.
 {¶ 22} Next, we analyze whether appellant's comments to Betty Utt were sufficient to sustain a conviction for disorderly conduct. Utt testified that she warned appellant that he would be denied service if he did not "calm down." According to Utt, appellant continued using foul language, essentially ignoring her caveat. Because he continued with his rambunctious behavior, Utt told appellant he would not be served. Utt testified that, after she denied him service, appellant stated "fuck you" and "suck my dick."
 {¶ 23} Utt's testimony indicated that appellant, in a public place, willfully directed these epithets towards her. Utt warned appellant of the consequences of his conduct, viz., no service, yet he continued. In In the Matter of Lutseck (Dec. 29, 2000), 11th Dist. No. 99-T-0130, 2000 Ohio App. LEXIS 6219, we stated: "to tell anyone * * *, `fuck you,' either verbally or via extended digit, may indeed constitute fighting words, depending on the circumstances." Id. at 5. In the case sub judice, as inLutseck, we believe appellant's statements constitute "fighting words" prohibited by statute because they were spoken in public, were intentionally directed toward Utt, and were likely to incite the average person. Consequently, appellant's conviction is supported by sufficient evidence.
 {¶ 24} Appellant next argues that his conviction is against the manifest weight of the evidence. We disagree. For many of the reasons set forth above, we believe the greater amount of credible evidence was presented on behalf of the city to sustain appellant's conviction for disorderly conduct. Although appellant maintains Utt's and Altomare's constructions of the facts differ, we can find no material contradictions in the record. Moreover, appellant contends that Utt lied to the extent that she testified appellant did not apologize to her. Irrespective of the apology, the trial court weighed the evidence presented by both sides and found the greater amount of credible evidence presented by the prosecution. In rendering its verdict, the trial court did not "clearly lose its way" and create a manifest miscarriage of justice. Thus, appellant's first assignment of error is overruled.
 {¶ 25} In his second assignment of error, appellant contends that Officer Altomare was negligent in arresting appellant. We first note that the current matter is a criminal action and thus the legal concept of negligence does not directly pertain to the underlying proceedings. Moreover, we are not familiar with the affirmative defense of "negligent arrest."[3]
 {¶ 26} As stated previously, appellant was warned by the officers and persisted with his loud, boisterous conduct. After reviewing the record, the officer had probable cause to arrest appellant for disorderly conduct. Therefore, appellant's second assignment of error is without merit.
 {¶ 27} In his third assignment of error, appellant argues that the trial court discriminated against him. The thrust of appellant's argument focuses on the trial court overruling each of his objections while sustaining the prosecution's objections. Particularly, appellant maintains he:
 {¶ 28} "* * * objected twice and was overruled both times. One of the objections was that of which [sic] showed no evidence to the arrest. The objection was overruled. The court allowed both Mrs. Utt and the prosecutor, Mr. Silver, to speak of the contact Mrs. Utt and the defendant-appellant had after the arrest at hand The few times the defendant-appellant brought up the contact of Mrs. Utt and himself, the court denied him to speak of that incident. Stating that information was not relevant to the matter at hand"
 {¶ 29} Appellant fails to make specific citations to the record in support of his claim. Moreover, without some definition as to the nature of the post arrest contact appellant allegedly had with Mrs. Utt we are at a loss to evaluate his claim. After reviewing the record, however, we find no discriminatory evidentiary rulings against appellant. Thus, his third assignment of error is without merit.
 {¶ 30} In his final assignment of error, appellant asserts that his sentence was unfair and unjust. The trial court has broad discretion when sentencing a defendant. State v. Conroy
(Dec. 17, 1993), 11th Dist. No. 92-G-1735, 1993 Ohio App. LEXIS, at 4-5. Thus, our review in an appeal challenging the severity of a sentence is whether the trial court abused its discretion.
 {¶ 31} As a general proposition, an appellate court will not disturb the trial court's exercise of that discretion if the imposed sentence falls in statutory bounds. Id., citing Toledov. Reasonover (1965), 5 Ohio St.2d 22.
 {¶ 32} Appellant was convicted of disorderly conduct, a misdemeanor of the fourth degree. Misdemeanors of the fourth degree are punishable by a maximum sentence of thirty days in jail and a maximum fine of $250. Appellant was ultimately sentenced to 30 days in jail, with 29 days suspended, and a $250 fine. Clearly, the trial court's sentence falls within the statutory limits.
 {¶ 33} However, former R.C. 2929.22(E)[4] prohibits the imposition of "* * * a fine in addition to imprisonment for a misdemeanor unless a fine is specially adapted to deterrence of the offense or the correction of the offender" or "the offense has proximately resulted in physical harm to the person or property of another." Former R.C. 2929.22(F) prohibits the imposition of a fine that "* * * exceeds the amount that the offender is or will be able to pay * * * without undue hardship to the offender or the offender's dependents." These two statutory subsections "* * * impose an affirmative duty upon the court to justify its decision to impose both a fine and imprisonment for a misdemeanor" and to inquire into an offender's ability to pay the fine imposed. State v. Boyle, 11th Dist. Nos. 2003-P-0027, 2003-P-0028, and 2003-P-0029, 2004 Ohio 1531, at ¶ 33, citing State v. Polick (1995), 101 Ohio App.3d 428,432.
 {¶ 34} Where the lower court fails to consider whether a defendant is able to pay an imposed fine without undue hardship, the court abuses its discretion. Polick, supra; see, also,State v. Stevens (1992), 78 Ohio App.3d 847, 852. The record demonstrates that the court did not inquire into appellant's ability to pay the fine. Without some inquiry and/or justification, however brief, we are unable to effectively review the court's decision. As such, the lower court abused its discretion in sentencing appellant to 30 days in jail and a $250 fine without following the dictates of R.C. 2929.22(F). Appellant's fourth assignment of error is well taken.
 {¶ 35} For the foregoing reasons, appellant's first, second, and third assignments of error are without merit, while his fourth assignment of error is sustained. Therefore, the judgment of the Portage County Municipal Court, Kent Division, is affirmed in part; reversed in part and the matter is remanded for resentencing consistent with this opinion.
Ford, P.J., concurs in part with Concurring Opinion.
Grendell, J., concurs in part, dissents in part with a Concurring/Dissenting Opinion.
[1] When asked whether he was offended by appellant's use of the word "fuck," Officer Altomare testified: "I'm used to hearing the language and quite often one or two curse words are going to be said by patrons there, but when it gets beyond what is comfortable to hear in a restaurant to keep the noise level down and to keep the level of disorderly behavior down then we act. That particular night it was offensive to all of us."
[2] We recognize that appellant failed to make a formal Crim.R. 29 motion during trial. Ordinarily, failure to move the court for acquittal both at the close of the state's evidence and at the close of all evidences results in a waiver of the issue of evidential sufficiency. However, "[i]n the non-jury trial, * * * the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim.R. 29 motion at the close of all the evidence." Cty ofDayton v. Rogers (1979), 60 Ohio St.2d 162, 163.
[3] That said, we find no Ohio cases establishing a civil cause of action for negligent arrest as distinguished from false arrest and imprisonment. In such circumstances, however, a failure to exercise ordinary care may show a want of probable cause from which legal malice might be inferred. To wit, malicious prosecution. See, e.g., Brewer v. J.C. Penney Co. (June 15, 1977), 9th Dist. No. 2523, 1977 Ohio App. LEXIS 8015, at 5-6. However, in the current matter, appellant does not specifically argue that the officer lacked probable cause to arrest him; rather, he contends that the officer acted improperly by arresting him for using the word "fuck" while others who were using the same word were not cited.
[4] Amended Substitute House Bill 490, effective January 1, 2004, changed the misdemeanor sentencing scheme within the Revised Code. However, this alteration does not bear on the instant matter as the alleged crimes and sentence preceded the Bill's effective date.