OPINION
{¶ 1} This matter comes before this court on a remand order from the Supreme Court of Ohio. In State v. Fulmer, 117 Ohio St.3d 319,2008-Ohio-936, the Supreme Court reversed this court's majority decision from State v. Fulmer, 11th Dist. No. 2005-L-137, 2006-Ohio-7015 (Rice, J., dissenting) (Fulmer I), in which this court reversed Mr. Fulmer's (hereinafter "appellant") convictions and remanded the matter for new trial. Pursuant to the Supreme Court's order, we now address the remaining errors assigned from appellant's original, direct appeal which were declared moot by the majority in *Page 2 Fulmer I. For the reasons herein, we now affirm the judgments of conviction and sentence entered by the Lake County Court of Common Pleas.
 {¶ 2} On October 23, 2005, Anne Mary Kinter, appellant's former fiancée, placed a 9-1-1 emergency call to the Willowick Police Department. Evidently, Ms. Kinter and appellant had recently broken up and appellant had advised Kinter he had consumed a "bottle of pills." Willowick Police Officer Jeffrey Pyle responded to the call. After consulting Kinter, Pyle learned appellant had removed himself to a garage owned by his friend, Gene Trebec. The garage, located in Eastlake, Ohio, was part of a business owned by Trebec. At the officer's request, Kinter called Trebec, explained the situation, and asked him to meet the police at the garage. Trebec agreed and indicated he would be there "right away."
 {¶ 3} While en route to the garage, Officer Pyle notified the Eastlake Police Department for assistance. Officer Pyle arrived and was soon joined by Eastlake Police Officers Vince Cronin and David Koehnle, as well as Eastlake Auxiliary Officer Jamie Hogya. The officers loudly knocked on the door of the garage; after receiving no answer, they decided to wait for Trebec. Suddenly, appellant emerged from the garage and obstreperously inquired: "What the f**k do you want?" Appellant was talking on his cell phone and appeared "irate."[1]
 {¶ 4} The officers explained they were dispatched to check on appellant's welfare. They informed appellant that an emergency call had been placed reporting he had ingested some pills. Appellant, still on the phone, returned to the interior of the *Page 3 
garage. The officers followed, asking what appellant had ingested. Although generally non-communicative, appellant related he had taken aspirin. After learning this, officers repeatedly asked appellant how many pills appellant had ingested. Appellant curtly replied that this was "none of [their] f**king business." At this point, the officers sent for an EMS squad.
 {¶ 5} Once inside the garage, Officer Pyle instructed appellant to "hang up" the phone and "have a seat." Officer Pyle then threatened to handcuff appellant. However, as he approached, appellant pushed the officer and struck him in the face with a closed fist. Officer Cronin immediately advised appellant he was under arrest and advanced on appellant. Pyle and Cronin attempted to grab appellant's arms and handcuff him but their efforts were unsuccessful. Officer Cronin testified:
 {¶ 6} "[appellant's] arms were swinging. He was swinging an arm with [a] closed fist. Physically pushing us. Kicking us, pulling away as we were trying to grab his arms to handcuff [them]. Screaming, yelling. He was definitely resisting and he did not want to be handcuffed."
 {¶ 7} Officer Koehnle entered the affray and attempted to take appellant to the ground but was unsuccessful. During the struggle, appellant obtained one of the officer's flashlights and struck Officer Koehnle in the back of the head with the implement. Auxiliary Officer Hogya witnessed the blow:
 {¶ 8} "[Officer Koehnle] tried picking the guy — getting him in a bear hug and he dropped his flashlight and at that time he wasn't — he was bent over, the Defendant *Page 4 
picked up the flashlight with his right hand and hit Officer Koehnle in the back of the head * * *."[2]
 {¶ 9} Officer Pyle ultimately sprayed appellant with pepper spray. The spray discharged in an indirect fashion and, in doing so, hit not only appellant but Officers Pyle and Cronin. Afterwards, Officer Cronin was able to grab appellant's legs and take him to the ground. However, while on the ground, appellant proceeded to kick Cronin in the chest and shoulder. Eventually, appellant was subdued and placed under arrest. Evidence established, as a result of the fight, Officer Pyle suffered a bruise to his face and various cuts and scrapes, Officer Cronin suffered a sprained shoulder, and Officer Koehnle possessed a large, golf ball-sized knot on the back of his head.
 {¶ 10} On January 25, 2005, appellant was indicted on one count of felonious assault, a felony of the first degree, in violation of R.C. 2903.11(A)(2) and two counts of assault, felonies of the fourth degree, in violation of R.C. 2903.13(A). Appellant waived his right to be present at the arraignment and the court entered a plea of "not guilty" on his behalf.
 {¶ 11} Appellant's jury trial began on June 7, 2005 and, on June 9, 2005, the jury returned verdicts of guilty on all charges. On July 25, 2005, appellant was sentenced to four years imprisonment for the felonious assault conviction and six months imprisonment for each assault conviction. The trial court ordered each sentence to run concurrently for an aggregate term of four years.
 {¶ 12} Appellant appealed his conviction and sentence to this court. In Fulmer I, this court reversed and remanded the case for a new trial based upon appellant's first *Page 5 
assignment of error.[3] The majority opinion held that the trial court abused its discretion when it sua sponte provided a limiting instruction advising the jury that Ohio does not recognize the partial defense of diminished capacity and thus it could not consider "any evidence as to [the defendant's] low intelligence or [defendant's medical condition in determining whether the [defendant possessed the requisite mental state, i.e, [sic] knowingly." Id. at ¶ 21. The majority opinion observed:
 {¶ 13} "[d]efense counsel utilized testimony derived from the state's medical expert as a means of demonstrating appellant may not have had a sufficiently culpable mental state to permit a conviction on the charged offenses. To the extent the evidence was relevant, probative, and not objected to[,] we believe the jury was entitled to entertain it during its deliberations." Id. at ¶ 32.
 {¶ 14} The majority therefore concluded that "the trial court's sua sponte intercession of [these] instructions * * * infringed upon the province of the jury thereby denying appellant due process of law." Id. Because the majority's conclusion was dispositive of the appeal, it held appellant's remaining three assignments of error were moot and did not require attention. Id. at ¶ 34.
 {¶ 15} The state appealed the reversal to the Supreme Court of Ohio and, in State v. Fulmer, 117 Ohio St.3d 319, 2008 Ohio 936, the Court reversed this court's decision, holding:
 {¶ 16} "In cases in which a defendant asserts the functional equivalent of a diminished capacity defense, the trial court should instruct the jury to disregard the *Page 6 
evidence used to support that defense unless the defendant can demonstrate that the evidence is relevant and probative for purposes other than a diminished capacity defense. (State v. Wilcox (1982),70 Ohio St.2d 182 * * * applied.)" Fulmer, supra, at the syllabus.
 {¶ 17} Based upon the foregoing holding, the Court remanded the matter to this court to consider appellant's remaining three assignments of error. Pursuant to this order, we shall begin our analysis with appellant's second assignment of error, which states:
 {¶ 18} "The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim. R. 29(A)."
 {¶ 19} Under this assignment of error, appellant asserts the trial court should have dismissed the charges after the state rested because it failed to offer sufficient evidence to prove the charged offenses. We disagree.
 {¶ 20} When measuring the sufficiency of the evidence, an appellate court must consider whether the state set forth adequate evidence to sustain the jury's verdict as a matter of law. City of Kent v.Kinsey, 11th Dist. No. 2003-P-0056, 2004-Ohio-4699, at ¶ 11. A verdict is supported by sufficient evidence when, after viewing the evidence most strongly in favor of the prosecution, there is substantial evidence upon which a jury could reasonably conclude that the state proved all elements of the offense beyond a reasonable doubt. State v.Schaffer (1998), 127 Ohio App.3d 501, 503, citing State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, 14-15.
 {¶ 21} Testimony at trial revealed Officers Pyle, Koehnle, Cronin, and Auxiliary Officer Hogya arrived at Gene Trebec's business to check on appellant's welfare. *Page 7 
Apparently, appellant had sequestered himself in Trebec's garage. After knocking on the door of Trebec's garage, appellant emerged, acerbically addressed the officers, and re-entered the garage. In an effort to determine appellant's well-being, the officers followed and, once inside, demanded appellant sit down and terminate his phone call. Officer Pyle testified he then approached appellant, at which time appellant shoved Pyle and struck him in the face (during the fight that followed, Pyle testified he was also struck in the stomach by appellant). A struggle ensued during which the Officers Pyle, Koehnle, and Cronin attempted to restrain appellant. Auxiliary Officer Hogya observed the donnybrook but did not engage physically per police protocol.
 {¶ 22} Testimony established that, throughout the struggle, appellant was kicking, screaming, and flailing his arms. During the melee, one of the officers dropped his flashlight. According to Hogya, appellant was able to retrieve the flashlight and strike Officer Koehnle near the base of his skull. Koehnle dropped to the ground, blacked out for a few seconds, but then returned to assist his fellow officers. Eventually, Officer Cronin was able to grab appellant's legs and take him to the ground. However, during the process, appellant kicked Cronin in the chest and shoulder. Finally, the officers were able to subdue appellant.
 {¶ 23} As a result of the foregoing events, appellant was charged with felonious assault of Officer Koehnle. R.C. 2903.11(A)(2), the statute defining the crime of felonious assault, provides:
 {¶ 24} "(A) No person shall knowingly:
 {¶ 25} "* * * *Page 8 
 {¶ 26} "(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordinance, as defined in section 2923.11 of the Revised Code."
 {¶ 27} "Deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon or possessed, carried, or used as a weapon." R.C. 2923.119(A).
 {¶ 28} Furthermore,
 {¶ 29} "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 30} Testimony demonstrated that appellant picked up the flashlight during the fight and struck Koehnle on the back of the head. The circumstances of the fight are such that a reasonable factfinder could infer appellant was aware that such a strike would cause physical harm and/or disable Koehnle. Testimony established Koehnle had a large knot on his head from the strike and, later, a CAT scan revealed he suffered a contusion from the blow. Further, Dr. William Bligh-Glover, a forensic pathologist, testified that the flashlight, if used as a weapon for striking, could inflict death. We consequently believe the state offered sufficient evidence to overcome appellant's Crim. R. 29 motion as it pertained to the felonious assault charge.
 {¶ 31} Appellant was also charged with assaulting Officers Pyle and Cronin. R.C. 2903.13(A) and (C)(3) provides: *Page 9 
 {¶ 32} "(A) no person shall knowingly cause or attempt to cause physical harm to another.
 {¶ 33} "* * *
 {¶ 34} "(C)(3) If the victim of the offense is a peace officer, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree * * *."
 {¶ 35} The evidence established that appellant deliberately pushed Officer Pyle and then punched him in the face with a closed fist. Pyle also stated appellant punched him in the stomach at some point during the struggle. These overt physical gestures are sufficient for a jury to infer appellant possessed the requisite mens rea to meet the general definition of assault. Pyle suffered a bruised face and had various scrapes on his arms and knees. Moreover, Officer Pyle was clearly performing his official duties as a peace officer when he was struck.
 {¶ 36} Next, appellant, in an apparent effort to keep Officer Cronin from advancing, kicked the officer in the chest and shoulder. Again, the evidence was such that a jury could reasonably infer appellant knowingly struck Cronin. Testimony established that Cronin sustained a sprained shoulder as a result of appellant's kick. Further, Officer Cronin was assaulted while performing his official duties as a police officer.
 {¶ 37} Accordingly, we believe the state set forth sufficient evidence to convict appellant on each of the three counts with which he was charged. The trial court did not err in overruling appellant's Crim. R. 29 motion and therefore appellant's second assignment of error is without merit. *Page 10 
 {¶ 38} Appellant's third assignment of error reads:
 {¶ 39} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 40} "`In determining whether the verdict was against the manifest weight of the evidence, `* * * the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'" State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15, quoting,State v. Davis (1988), 49 Ohio App.3d 109, 113.
 {¶ 41} The determination of witness credibility is primarily left to the trier of fact who is in the best position to observe and evaluate the demeanor, voice inflection, and gestures of the witnesses. State v.Kyser (Aug. 10, 2000), 7th Dist. No. 98 CA 144, 2000 Ohio App. LEXIS 3687, *16-*17.
 {¶ 42} In support of his manifest weight argument, appellant contends the state failed to present adequate probative evidence demonstrating his was the cause of the officers' various injuries. We disagree.
 {¶ 43} Officer Koehnle's injuries were specifically witnessed by Auxiliary Officer Hogya. Hogya testified he observed appellant pick up a flashlight from the ground and strike Koehnle on the occipital region of his head. Officer Pyle personally testified that appellant pushed and struck him twice, once in the face and once in the stomach. Officer Cronin testified that appellant, amidst a frenzied episode of kicks, struck him in the chest and shoulder. We do not believe the evidence regarding appellant's role in *Page 11 
causing the specific injuries was either vague or uncertain. The responding officers were able to relay an essentially consistent version of the fight and there was no evidence suggesting the officers may have somehow inflicted their respective injuries on one another. Appellant's third assignment of error is overruled.
 {¶ 44} Appellant's final assignment of error alleges:
 {¶ 45} "The trial court erred when it sentenced the defendant-appellant to a more-than-the-minimum prison sentence based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the defendant-appellant's state and federal constitutional rights to trial by jury."
 {¶ 46} After being convicted on all charges, the trial court ordered:
 {¶ 47} "That the Defendant serve a stated prison term of four (4) years in prison on Count 1, six (6) months in prison on Count 2, and six (6) months in prison on Count 3. Said prison terms shall be served concurrently with each other at the Lorain Correctional Institution, * * *"
 {¶ 48} In sentencing appellant to a term of four years imprisonment on Count 1, the trial court engaged in judicial fact-finding formerly mandated by R.C. 2929.14(B). At the time of the trial court's judgment entry of sentence, the trial court was constrained to make the R.C. 2929.14(B) findings to properly impose more than the minimum sentence. However, in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, released during the pendency of this appeal, the Supreme Court of Ohio held that former R.C. 2929.14(B), inter al., were unconstitutional as they functioned to deprive a defendant of the right to a jury trial pursuant to Apprendi v. New Jersey (2000), 530 U.S. 466, and Blakely v.Washington, 542 U.S. 296. By way of remedy, the court severed the *Page 12 
unconstitutional provisions of the Revised Code, including R.C. 2929.14(B), announcing judicial fact-finding is no longer required before imposing more than the minimum sentence. Foster, at paragraph two of the syllabus.
 {¶ 49} Although Foster had not been released at the time of appellant's sentence, Blakely had. In fact, the instant assignment of error is premised upon an application of the United States Supreme Court's holding in Blakely. Notwithstanding this reliance, defense counsel did not level a Blakely-oriented objection during appellant's sentencing hearing. In State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642, the Supreme Court of Ohio recently determined "that a lack of an objection to the trial court forfeits the Blakely issue for purposes of appeal when the sentencing occurred after the announcement of Blakely." Payne, supra, at 508. While a forfeited issue is not properly preserved for appellate review, it does not extinguish a claim of plain error under Crim. R. 52(B). Payne, supra, at 507. As counsel failed to object pursuant to Blakely, we shall therefore review appellant's argument for plain error.
 {¶ 50} Crim. R. 52(B) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error does not exist unless, but for the error, the outcome of the proceeding would have been different.State v. Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 51} Here, appellant cannot establish that but for theBlakely error, he would have received a more lenient sentence. As the court in Payne, supra, pointed out: *Page 13 
 {¶ 52} "* * * Foster represents a Pyrrhic victory for Payne and other defendants affected by its holding. Although defendants were successful in arguing the unconstitutionality of the sections of the statutes that required judicial findings for the imposition of higher than minimum sanctions, we did not adopt their proposed remedy of mandatory minimum sentences. Since Foster, trial courts no longer must navigate a series of criteria that dictate the sentence and ignore judicial discretion."Payne, supra, at 507.
 {¶ 53} Appellant has not demonstrated any prejudice from the judicial fact-finding required by former R.C. 2929.14(B). Even if appellant were resentenced, nothing would prevent the trial court from considering the same factors previously considered and sentencing him to the same or a more severe sentence. Payne, supra. Consequently, we find no plain error.
 {¶ 54} Appellant's final assignment of error lacks merit.
 {¶ 55} For the foregoing reasons, appellant's assignments of error are without merit. Accordingly, the judgment of conviction and sentencing order of the Lake County Court of Common Pleas is hereby affirmed.
TIMOTHY P. CANNON, J., concurs,
COLLEEN MARY OTOOLE, J., concurs in judgment only.
[1] Testimony established appellant was on the phone with Ms. Kinter when the officers arrived. Although unsure of his physical or mental state, Kinter testified she believed appellant had taken something from the way he sounded on the phone.
[2] Auxiliary Officer Hogya testified he observed the fight but did not participate because, as an auxiliary officer, he is not covered under the department's insurance.
[3] Appellant's first assignment of error alleged that "[t]he trial court abused its discretion when[,] in its charge to the jury[,] it unconstitutionally diluted the requirement that the state prove each and every element of the offenses beyond a reasonable doubt." *Page 1