[Cite as *State v. McDonald*, 2018-Ohio-3845.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0008** |
| MARK R. MCDONALD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula Municipal Court, Case No. 2017 CRB 00864.

Judgment: Affirmed.

*Michael Franklin*, Ashtabula City Solicitor, and *Lori B. Lamer*, Assistant Ashtabula City Solicitor, Ashtabula Municipal Court, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Wesley A. Johnston*, P.O. Box 6041, Youngstown, OH 44501 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Mark R. McDonald, appeals the January 9, 2018 judgment entry of the Ashtabula Municipal Court, convicting him of aggravated menacing and criminal trespass. The trial court's judgment is affirmed.

{¶2} On May 30, 2017, a complaint, affidavit, and summons were filed in the Ashtabula Municipal Court, charging appellant with aggravated menacing, a first-degree misdemeanor in violation of Ashtabula Codified Ordinance 537.05, and criminal trespass,

a fourth-degree misdemeanor in violation of Ashtabula Codified Ordinance 541.05. Appellant entered a plea of not guilty.

{¶3} A bench trial was held on January 9, 2018. Appellant was represented by counsel and testified on his own behalf. Ashtabula City Police Lieutenant Jason Erwin testified on behalf of the city of Ashtabula. The following is a summary of the testimony from trial.

{¶4} Lt. Erwin testified that on May 30, 2017, he was driving his patrol car and observed appellant walking on the railroad tracks on West 30th Street in Ashtabula. Appellant matched the description of a suspect involved in a theft that occurred earlier that day, so Lt. Erwin attempted to stop appellant to identify him.

{¶5} Lt. Erwin also explained that the railroad does not permit anyone to walk on its property, and he had been called to the railroad property in the past to take enforcement action.

{¶6} After making unsuccessful efforts to stop appellant from his patrol car, Lt. Erwin exited his vehicle and attempted to catch up to appellant on foot. Lt. Erwin testified he gave several commands for appellant to stop, but appellant ignored them.

{¶7} When Lt. Erwin reached appellant, he put his hand on appellant's shoulder and told him to stop. Lt. Erwin testified appellant "flung" the duffle bag he was carrying off his shoulder, "spun around in an aggressive fashion, and I believe his exact words were 'don't f---ing run up on me like that.'" Lt. Erwin attempted to explain his reason for stopping appellant, and in response, appellant threatened him. Lt. Erwin explained that "[appellant] would have no conversation with me, other than to threaten me that he was going to assault me, he was going to fight with me; that I had no reason to stop him and

2

that I was simply harassing him." Lt. Erwin further testified that appellant stated "multiple times and in multiple phrases, that he was going to 'beat my ass and f--- me.'"

**{¶8}** Lt. Erwin ordered appellant several times to turn around because he was under arrest, but appellant refused and began walking away. Lt. Erwin warned appellant that if he walked away or made an aggressive move, he would be tased. Lt. Erwin drew his taser and ordered appellant to turn around and put his hands behind his back. Appellant complied, and Lt. Erwin handcuffed him. After being handcuffed, appellant "continued with his tirade, continued to threaten me, continued to say * * * that when the handcuffs came off, that he was going to fight." Lt. Erwin testified he believed appellant when he said he was going to fight him.

**{¶9}** Lt. Erwin activated his lapel microphone and recorded part of appellant's threats at him. The recording was played for the judge. On the recording, appellant is heard yelling. Much of the yelling is unintelligible; however, appellant is heard saying: "I'll snap your f-----' little neck [and] see how you f-----' like it[.]"

**{¶10}** Appellant was ultimately ruled out as a suspect of the theft. Lt. Erwin, however, issued appellant a citation for aggravated menacing and trespassing.

**{¶11}** Lt. Erwin testified he felt threatened even when appellant attempted to walk away from him. He affirmed that he was in fear for his personal safety during his interaction with appellant.

**{¶12}** Following Lt. Erwin's testimony, defense counsel made a Crim.R. 29 motion for acquittal, which the trial court denied.

**{¶13}** Appellant testified that on May 30, 2017, he was cutting across the railroad tracks on his way home from the gym. He was listening to music on his earphones while

3

walking.  Appellant testified that suddenly he was "spun around" by his elbow.  He testified to the following regarding the encounter: "I told him, for his own safety - - that's now [sic] how you conduct yourself when wanting to stop somebody.  And then - - and then I told him, yeah, okay, you have no reason to stop me.  I didn't do nothing wrong.  I'm - - I'm - - I'm literally trying to get away from him, walking away.  He's just following me, stop, blah, blah, blah, blah.  Then he pulls his Taser on me."

{¶14}  Appellant testified he felt threatened when Lt. Erwin came up behind him.  Appellant admitted he made threats to Lt. Erwin after being handcuffed and continued repeating those threats "[a]ll the way up till - - till they booked me * * *."  Appellant affirmed he made the statements he was going to "f--- him up" and "beat his ass."  Appellant denied making any threats prior to being handcuffed.  Appellant further denied making any threatening motions toward Lt. Erwin.  Appellant affirmed that he did not have permission to be on railroad property.

{¶15}  After hearing the testimony of Lt. Erwin and appellant, the trial court made a finding of guilt based on the evidence presented and immediately proceeded to sentencing.  The city solicitor indicated appellant had multiple prior convictions from the municipal court.  The judge ordered appellant to submit to a drug screen.

{¶16}  Appellant was sentenced to 90 days in jail on the aggravated menacing charge and 15 days in jail on the criminal trespass charge, to be served concurrently, and was awarded 7 days of jail-time credit.  The judgment entry was filed on January 9, 2018.

{¶17}  On January 16, 2018, appellant wrote a letter to the trial judge, requesting he be released from jail.  Appellant's request was granted, and his sentence was suspended on the condition appellant remains law abiding for two years.

4

**{¶18}** Appellant noticed a timely appeal from the January 9, 2018 entry. He asserts two assignments of error on appeal.

**{¶19}** The assignments of error state:

> [1.] The trial court erred when it sentenced Appellant without considering the purposes and principles of misdemeanor sentencing contained in R.C. 2929.21 and the sentencing factors in R.C. 2929.22.
>
> [2.] The evidence was insufficient to support the trial court's verdict of 'guilty' and the Appellant's convictions were against the manifest weight of the evidence.

**{¶20}** Under his first assignment of error, appellant maintains the trial court failed to make any reference to the purposes and principles of misdemeanor sentencing contained in R.C. 2929.21 and the sentencing factors contained in R.C. 2929.22 prior to imposing his sentence. Appellant argues the trial court erred when it sentenced him to serve 90 days in jail because his offenses were non-violent, as he had caused no injury.

**{¶21}** "'Misdemeanor sentencing is within the discretion of the trial court and a sentence will not be disturbed absent an abuse of discretion.'" *State v. Corbissero*, 11th Dist. Ashtabula No. 2011-A-0028, 2012-Ohio-1449, ¶53, quoting *Conneaut v. Peaspanen*, 11th Dist. Ashtabula No. 2004-A-0053, 2005-Ohio-4658, ¶18 (citation omitted). An abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶22}** R.C. 2929.21(A) provides that a court sentencing a misdemeanor offender "shall be guided by the overriding purposes of misdemeanor sentencing," i.e., "to protect the public from future crime by the offender and others and to punish the offender." A sentence imposed for a misdemeanor "shall be reasonably calculated to achieve the two

5

overriding purposes of misdemeanor sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B).

{¶23} To achieve the two overriding purposes and principles of misdemeanor sentencing, the sentencing court must consider the criteria set out in R.C. 2929.22(B). *State v. Cooper*, 11th Dist. Ashtabula Nos. 2015-A-0042, 2015-A-0043, 2015-A-0044, & 2015-A-0045, 2016-Ohio-4730, ¶9. R.C. 2929.22 does not, however, mandate that the trial court state on the record that it considered the applicable statutory factors. *State v. Kish*, 11th Dist. Lake No. 2010-L-138, 2011-Ohio-4172, ¶8, citing *Peaspanen*, *supra*, at ¶29. "'A silent record raises the presumption that the trial court considered all of the factors[.]'" *State v. Peppeard*, 11th Dist. Portage No. 2008-P-0058, 2009-Ohio-1648, ¶75, quoting *Peaspanen*, *supra*, at ¶26 (citation omitted). Consequently, when the misdemeanor offender's sentence is within the statutory limits and there is no affirmative indication on the record that the trial court failed to consider the factors set forth in R.C. 2929.22, the reviewing court is to presume the trial court considered the applicable statutory factors when it imposed the sentence. *Peaspanen*, *supra*, at ¶18 (citation omitted).

{¶24} Appellant's sentence falls within the statutory limits. *See* R.C. 2929.24(A)(1) & (4) and Ashtabula Codified Ordinance 501.99(b)(2) & (5). Although the trial court did not specifically reference R.C. 2929.21 and R.C. 2929.22 when sentencing appellant, appellant has failed to demonstrate the record contains an affirmative showing the trial court did not consider the factors. Consequently, the trial court is presumed to

6

have considered the appropriate factors. Therefore, the trial court did not abuse its discretion in sentencing appellant.

**{¶25}** Appellant's first assignment of error is without merit.

**{¶26}** Under his second assignment of error, appellant raises issues pertaining to both the sufficiency and manifest weight of the evidence.

**{¶27}** When measuring the sufficiency of the evidence, an appellate court must consider whether the state has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *Kent v. Kinsey*, 11th Dist. Portage No. 2003-P-0056, 2004-Ohio-4699, ¶11, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, (1991), paragraph two of the syllabus.

**{¶28}** To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.* at 387, quoting *Martin, supra*, at 175.

{¶29} We are mindful that the trier of fact is entitled to believe all, part, or none of a witness's testimony. *State v. Williams*, 11th Dist. Lake No. 2012-L-078, 2013-Ohio-2040, ¶21 (citation omitted). "The trier of fact is in the best position to evaluate inconsistencies in testimony by observing the witness's manner and demeanor on the witness stand—attributes impossible to glean through a printed record." *Id.* Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's determinations of credibility. *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶30.

{¶30} Appellant was convicted of aggravated menacing, in violation of Ashtabula Codified Ordinance 537.05, and criminal trespass, in violation of Ashtabula Codified Ordinance 541.05.

{¶31} Ashtabula Codified Ordinance 537.05, Aggravated Menacing, provides, in pertinent part: "(a) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * *." "'Serious physical harm to persons' means any of the following:

> (1) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (2) Any physical harm that carries a substantial risk of death;
>
> (3) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (4) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement;
>
> (5) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain.

Ashtabula Codified Ordinance 501.01(e).

{¶32} Ashtabula Codified Ordinance 541.05, Criminal Trespass, provides, in pertinent part: "(a) No person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the land or premises of another[.]"

{¶33} Appellant contends the city failed to prove the elements of aggravated menacing beyond a reasonable doubt because the city failed to establish that Lt. Erwin "had a reasonable belief" that appellant would cause him serious physical harm. Appellant argues Lt. Erwin's belief was not reasonable because appellant could not have harmed Lt. Erwin, as he was handcuffed when he made the threats.

{¶34} Aggravated menacing does not, however, require proof that the offender is able to carry out his threat or that he intends to carry it out or believes himself capable of carrying it out. *State v. Charlton*, 11th Dist. Trumbull No. 2006-T-0079, 2007-Ohio-2051, ¶11-12, quoting 1973 Legislative Comment, R.C. 2903.21. Further, an aggravated menacing conviction does not require proof that the offender threatened *imminent* serious physical harm. *State v. Lewis*, 11th Dist. Portage No. 96-P-0272, 1997 WL 589914, *3 (Aug. 22, 1997); *see also Portsmouth v. Wrage*, 4th Dist. Scioto No. 08CA3237, 2009-Ohio-3390, ¶16. "'What is necessary to establish the crime of aggravated menacing is the victim's subjective belief that the defendant will cause serious physical harm. * * * [A] person can be convicted of aggravated menacing even though the person has not made any movement toward carrying out the threat.'" *State v. Gardner*, 8th Dist. Cuyahoga No. 104677, 2017-Ohio-7241, ¶21; *see also*, *supra*, at ¶21, quoting *State v. Perkins*, 8th Dist. Cuyahoga No. 86685, 2006-Ohio-3678, ¶14. It is sufficient for the defendant to knowingly cause the victim to believe he will carry his threat into execution. *Id.* A person acts

9

knowingly when "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B); *see also Charlton*, *supra*, at ¶14.

{¶35} Viewing the testimony presented at trial in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of aggravated menacing proven beyond a reasonable doubt.

{¶36} Furthermore, Lt. Erwin testified that appellant threatened him before and after he was handcuffed. Appellant maintains Lt. Erwin's testimony in this regard was not credible. Although appellant offered testimony that conflicted with Lt. Erwin's testimony, the trial judge was permitted to determine the credibility of the witnesses. We cannot conclude that the trier of fact clearly lost its way in finding appellant guilty of aggravated menacing.

{¶37} Regarding criminal trespass, appellant argues the city "presented no evidence that the property was owned by the railroad and/or that there was any prohibition to being on the property at the time of appellant's arrest." Lt. Erwin and appellant both testified, however, that appellant was walking on the railroad tracks on the night of the incident. Lt. Erwin testified that in the past he was called to enforce the railroad's prohibition of people walking on their property. Appellant affirmed he was walking on the tracks without permission from the railroad and explained he did so in order to reduce his commute time. Viewing this evidence in the light most favorable to the prosecution, the trier of fact could have found the elements of criminal trespass proven beyond a reasonable doubt. Additionally, we cannot conclude the trier of fact lost its way in finding appellant guilty of criminal trespass.

10

{¶38} Appellant's second assignment of error is without merit.

{¶39} For the foregoing reasons, the judgment of the Ashtabula Municipal Court is affirmed.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.